Good morning, Your Honors. My name is Rami Kayyali. I'm the attorney for Plaintiff Hardy. Could you speak a little more loudly, please? Yes. My name is Rami Kayyali. I'm the attorney for Plaintiff Hardy, Donata Hardy. I've told you the story of Donata Hardy in legalese, and I kind of wanted to tell you the human part of it because I think this is the most important dynamic that's going on. I represent Donata Hardy, who in 2008 was arrested for prostitution. And so what happened is she came to my office and asked me to represent her. It was a difficult case because subsequent to this arrest that resulted in a, that went to trial, and she's not guilty, she had a subsequent arrest that was also dismissed in pretrial proceedings. So obviously when you see something like that, you know, as a human being, regardless of your training as a lawyer, that's bound to affect you. And so I was aware of that dynamic, and I pretty much went into this case understanding that this is what I'm going to be dealing with. And so sure enough, we went to court, we went to trial, and in the pretrial proceedings in this particular case, the judge basically summarily adjudicated the entire case. As it stands, how the trial went, we had three players in the trial, four players, if you will. There was Plaintiff Hardy, there was her husband, there was the police officer, Bart Landsman, and then there was an independent witness that, in my opinion, is above impeachment, a retired college professor, Cal State Long Beach, with three Purple Hearts, which never came in evidence, but a person that has no interest in the outcome of the case whatsoever. He testified in a criminal case, and so I had went to a lot of lengths to get him to come down from Sacramento to testify in the civil case. And so what the judge did in this case, as the trial progressed, nobody was impeached, not Donata Hardy, not her husband, not the police officer, and certainly not the independent witness. Nobody was impeached. But what the judge did in pretrial proceeding, he removed all the credibility issues that have accumulated against the defendant, police officer Bart Landsman. And this was just removed from the case, and these were serious allegations. This is a man that had two formal reprimands from the LAPD, six formal investigations of him. He retired early, forgoing about 30 percent of his pension, while an investigation of him was pending. And all of that was removed from evidence. So I had a, for all purposes, for purposes of this trial, I had an officer that was sitting there that was as clean as a snowflake, and it was his word against Donata Hardy's, with the independent witness. Should have broken the balance, in our favor, because the witness was not impeached. Now, the problem is, of course, you know, I don't know what a juror may take one look at a person and say, yeah, this person, I just don't believe him. So I'm not attacking that. What I am attacking is the fact that all of the credibility issues that pertain to Bart Landsman were removed from the case, summarily. Never had an opportunity to say anything against Bart Landsman. And for all purposes, for purposes of the jurors, this man had done nothing, and he was sitting there, had no complaints against him, no problem. He's just a retired police officer that retired because he had cancer. Well, he didn't get into that. But, of course, he didn't want to produce any records, any leave of absence, or anything to support what he's saying. So, counsel, is your argument based on an abuse of discretion in applying Rule 403, or is it based on the stipulation argument? No, no. It's the abuse of discretion, Rule 403. All right. The stipulation is minor. I don't think that it really made that much difference. Well, Rule 403, you know, you're supposed to look at the logic of the case. It's really a gut call and experience call. And the issues that were summarily removed from the evidence, like I said, the first, Bart Landsman had two formal reprimands from the LAPD. I wasn't able to find out what the subject matter of either the reprimands or the six investigations were. Did you determine what they were? I mean... I deposed him regarding the subject matter, and then I set the deposition. Were the reprimands and the investigations based on him falsely accusing women of being prostitutes and showing a sort of a modus operandi of attempting to implicate women? As prostitutes because of some racial discriminatory... No, that's not the case. How do we know that the reprimands and the investigations had anything to do with his credibility? Maybe he was reprimanded because he got to work late. No, I know why he was reprimanded. I deposed him on it. I mean, one reprimand was for basically causing property damage and violating police procedures. How does that affect his credibility as to whether Hardy was a prostitute or not? I deposed him, and his attitude... It's typical character evidence, isn't it? It's evidence of misdeeds that show a bad character to show that a person on this occasion acted with a bad character. Your Honor, aside from that, if you're facing an investigation and you have two formal reprimands... About what? Well, it doesn't matter. If he has reprimands against him, he has to be concerned about his status with the LAPD. Now, the reprimands he says they're not serious, they're formal reprimands. Suppose he ran a red light and got reprimanded? No, no. These are formal reprimands, Your Honor. You don't get reprimanded just for a red light. I mean, these are formal reprimands. Can you tell me the substance of the reprimand and how they affected his credibility as to a false charge that Hardy was a prostitute? I think, Your Honor, that his casual attitude towards the rules tells the story. And that's what came out in the deposition. I was not able to expose any of that in trial. He had a very casual attitude towards the rules. That's nothing. It's no big deal. That was his attitude. Now, of course, I followed up with that and I set the deposition of the city of Los Angeles, the person most knowledgeable, if you will, and guess who showed up? It was him again. He showed up even though he wasn't for the LAPD. So I wasn't able to explore that any further because the city, frankly, did not want to cooperate in discovery. But I was happy to go in with the information that I had and the circumstances of his retirement. The fact that they would not produce anything that showed that he had any illness or anything like that that prompted his retirement. Are you claiming, did you make a pitches motion? No, I did not make a pitches motion. Are you claiming that they have any braiding material they didn't give you? No, I did not. This is, of course, a civil case, not a criminal case, Your Honor. Anything further for the moment? You have plenty of reserved time. No, I don't really. I mean, I'm just rehashing what I told you. It's really a gut call. I just think that the fact that all of this was denuded and you never had an opportunity to understand that this was not a person sitting in front of you that was clean. He had a lot of issues that should have been brought before the jury. And I think that, and I kind of pointed out to the, I tried to keep the trial. At that point, I pretty much knew I lost the trial after the pretrial proceeding. Do you want to say anything about the denial of the motion for the new trial? Yeah, and so the denial for the motion for new trial, I just said, here's an example. I was telling the judge, here's an example for you that shows that there had to be prejudice in what happened. Because the fact that you had nobody was impeached, yet here's the outcome. And I thought that one of the most important dynamics that's going on, you see, I think the judge treated this, his attitude was this in chambers. Well, look, I mean, this case is about, you know, at the end of the day, it's about this, you know, you have two competing stories and then you have this independent witness. It's all about whether the jury believes this witness or not. That's all it's about. But I think this disregards the reality that a police officer is your employee, my employee, he's everybody's dog, he's our dog. And we're not inclined to say, gee, I mean, this guy, so there has to be prejudice in his favor, because he works for us. And that's the attitude, in my opinion, of everybody. And so it's a fiction, it's a fiction to think that a police officer stands on the same ground as a plaintiff when a plaintiff makes an allegation against a police officer. I think that's just a, that's a fiction that was indulged in. I thought that the trial showed that that's a fiction that was indulged in. All right. Well, let's hear from the other side. You still have five minutes to rebut. Good morning. Lisa Berger, deputy city attorney for the Appalachia City of Los Angeles. Basically, what the appellant has come here to say is that the case was prejudiced because she was not allowed to smear the defendant officer with completely unrelated matters and speculation as to why he retired. And as the court has pointed out, that's exactly what the rules of evidence do not allow. A party is not allowed to come in and claim that another party acted wrongly on a specific occasion, because on that particular occasion, on other occasions, he did other things that were completely different and completely unrelated. The court acted entirely appropriately in excluding that evidence, and there was no abuse of discretion. The fact that the jury chose to conclude that the plaintiff had not proven her case is the jury's discretion to do, and there is no reason to reverse that at this time. I had a concern about the closing argument. Originally, the defense lawyer said, I will not argue to the jury, hey, they said there was a flyer, where is it? I will not argue that. And then in closing, the argument was, where is the flyer, if that really happened? So it seemed to me pretty clear that the closing argument violated the stipulation, that that argument wouldn't be made. And I guess I would appreciate your comment on whether that had any effect on the verdict, in your view, or whether it was harmless. First, I would say that it was not misconduct, because in the context of the argument, the entire paragraph, it's clear that what the city's attorney was saying was, it's not here in this property report. That's not what counsel said. The lawyer said, where is the flyer, if that really happened? It didn't say anything about the inventory sheet. So I would like you to at least accept for the purpose of my question that it was a problem, and talk to me about harmless or prejudicial. Well, I would say it was harmless, because there was never any evidence of that flyer. The stipulation came about because the plaintiff wanted the court to tell the jury that there had been a flyer introduced in the criminal trial that had been destroyed, and therefore could no longer be introduced at the civil trial. But the flyer that was introduced at the criminal trial was not one that was given to Ms. Hardy at the date of her arrest. It was one that was current to the time of the criminal trial. The professor brought it in and said, this is one for my current class, this is the kind of flyer that I gave to her however many months before. So it was not, it was an exemplar. There was no reason why they could not have done the same thing for the civil trial. If they wanted to show what a flyer looked like, they could just as easily have brought one in from the class that was current to the civil trial. You're still arguing with me about, it seems to me, whether there was a misstatement in any way, or whether it was appropriate to say this. But I want you to assume that it wasn't appropriate to go against the agreement not to say anything about this. And so I'm trying to, I'm struggling with what is the potential effect on the verdict, if any, of the lawyer saying I'm not going to say this and then saying it. My argument, Your Honor, is that there was no harm. It was one comment, it was very brief. There was no flyer. There was no way that any difference could have happened if they had been allowed to adjudicate the existence of a flyer. It would not have been, it would not have changed any effect. The jury still would have been left not knowing whether, in fact, there was a flyer on the date of the arrest. And again, I simply cannot accept the Court's hypothetical, because you're taking the last two lines of a paragraph. That clearly is discussing the property report. So when you take it into that context, the possibility that that one statement in the middle of argument could have affected the jury's decision in their, their conclusion that the independent witness was not credible. Their conclusion, whether they believed everybody, didn't believe anybody, just simply didn't know what happened. They just found that she had not met her burden of proof. And the undisputed evidence was that by her own statement, this is a woman in a high prostitution area wearing a very short, very tight red dress, walking around a parking lot with at least one strange man. Whether there was a flyer or not a flyer, there's more than substantial evidence for the jury to conclude that the case had not been proven. So my answer to your question, I guess, would be that if it was error at all, it was harmless. Anything further? No, thank you. Thank you, counsel. Mr. Cogliali. Thank you, sir. You have some reserve time. Okay. The first issue I wanted to revisit real quickly is Your Honor's remark regarding okay, what about, how is, we just, if you look at one reprimand at a time and you take one at a time, that's one picture you draw. But if you look at all of these things together, then you have to evaluate each reprimand in a different manner. So I'd ask you to look at the totality of the evidence as a package and imagine what impact it would have on a jury. As it stands, I talked to the jurors and said, well, if I told you this and that, what would you think? They shared with me, oh, well, if I knew that, I would have thought differently. Well, they're not here. I don't have statements from them. I can't get anything from them. We really don't know what the juries would have thought. We don't know if just that flyer would have tipped the balance or not. We don't know. But I would think in this case, since we don't know, we would have to assume it has impact. The flyer has an impact. All of this evidence that was denuded from the trial also would have had an impact. As to the flyer, it was just straightforward legal error on the flyer issue. I was going to read from the transcript, from the criminal trial transcript. That's what I was going to, you know, that there was a flyer, that it was presented, that it was an exemplar. I mean, this man retired. He's a retired, he doesn't have, doesn't do classes anymore, doesn't have exemplars anymore. He was retired. He was up in Sacramento. I brought him out of retirement to come down and testify. So I didn't have that opportunity for him to produce another flyer. I asked him, believe me, I asked him if he could produce another one, but he couldn't. And so I think that if you look at the, going back to the evidence, you need to look at the totality of the items that were removed. And, okay, so let's say you say, all right, one of the, the first recommend you think is ultimately his character evidence. Let me go to the second one. Well, what about the circumstances of his retirement? What about the fact that he's claiming he looks really healthy, but he's claiming that he retired because of cancer? Yet, the LAPD, the city of Los Angeles cannot produce a single leave of absence. He won't produce anything. He didn't have to. It's based upon privacy. And you're dealing with a plaintiff. Any plaintiff, any defendant that you're dealing with that has the power to produce better evidence but doesn't do so, that is something that is for a jury to consider. Now, we didn't get any of that in. I mean, he was presented to the case. The judge, in his opinion, was this is all about they either believe the independent witness or they don't. And that's what his attitude was. And therefore, he decided to make it a, you know, brief trial on that issue. Now, by the way, I mean, I would have been prepared to try not only that case but also the subsequent arrests. I would have dragged everybody into the courtroom if you want to give me a two-month trial. But that's not a reality. I mean, obviously, he has to make a call to circumscribe the case because, you know, the courts are overwhelmed. But in this case, he just went too far in just cutting out everything, all the goods that we had on Bart Landsman, the defendant. It's your position that the defendant was, you're a plaintiff in a civil case, was entitled to show a questionable employment record and questionable grounds for retirement. Maybe he really wasn't as sick as he said he was. So he stretched the truth there. And he was a bad cop with six investigations and two reprimands. We don't know what the basis of it was. But that's the sort of thing which should be allowed to affect the credibility of the cop when he gets on the stand. Is that your argument? That's my argument and his reaction to how he handles it, how he thinks of the law as rules. He was like in that position. He thought the rules, oh, that's nothing. That's just tic-tac. I mean, the rules, this is an armed person. The discipline in the police and the military is very serious because they can't afford a breakdown. So any reprimand is a serious reprimand. There's no such thing as a trivial. And these are people that are represented by the most powerful unions probably in the country. I mean, certainly in this state. And they can't, and obviously the union, when they approach him, there has to be pretty much 100% evidence, clear evidence that to lose his pension, to lose his job, there has to be very clear evidence. But there is no witnesses in this case. The best thing that was happening is the fact that the only concrete objective evidence that I had is that she was arrested and the arrest report says that she wasn't wearing underwear. Now, when they searched her, she was searched by an independent person. No, there was no reference to that at all. And then they took her in the same attire to court. Now, the jury leapt through this enormous hoops to find that she didn't prove her case. Because consider this, they brought a witness that said, yeah, I brought her before the court. She had a short dress, no underwear on, and that's the way I took her in front of the judge. And, you know, you can't, if you wear a hat here, you're going to be asked to remove the hat, let alone come in naked to a court. That's just utterly ridiculous. And that's something that the jury went along with. And I just, just to show prejudice, they went along with that. That's just utterly ridiculous that they brought a naked woman, kept her naked, no mention of that. And then they said that she had condoms. There's no condoms in searching her. Thank you. Thank you, counsel. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bea